**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**DAMON A. HARLIN, JR.,**

                **Plaintiff,**

    v.                                                CASE NO. 22-3129-SAC

**USP LEAVENWORTH,**

                **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff Damon A. Harlin, Jr., who is incarcerated at Atchison County Jail, filed this pro se civil action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971), seeking relief for alleged violations of his constitutional rights while he was housed at the United States Penitentiary (USPL) in Leavenworth, Kansas. He proceeds *in forma pauperis*. The matter comes before the Court on Plaintiff's amended complaint (Doc. 7) and his motion to appoint counsel (Doc. 6). For the reasons discussed below, the Court will deny the motion to appoint counsel and order Plaintiff to file a complete and proper second amended complaint.

**I.  Nature of the Matter before the Court**

In the amended complaint, Plaintiff names as Defendants USPL Warden Donald Hudson, USPL Intake Assessor Jason Troll, and two unknown federal corrections officers (UFCO 1 and UFCO 2), of whom he gives a physical description. (Doc. 7, p. 1-3.) As the factual

1

background for the amended complaint, Plaintiff alleges that on the afternoon of December 15, 2021, he was transferred to USPL, at which time Defendant Troll conducted an intake assessment and confiscated Plaintiff's blood pressure medication. *Id.* at 2, 4. Defendant Troll informed Plaintiff that the confiscation was routine and his medication would be promptly returned. *Id.* at 5.

The next morning, around 11:00 a.m., Plaintiff had not received his medication, and he began experiencing chest pain, numbness on his left side, and dizziness. *Id.* at 7. Because Plaintiff was too weak to call for help, his cellmate began to do so, but they received no response. *Id.* at 6. After approximately 30 minutes, Plaintiff's cellmate began kicking the cell door. *Id.* About 30 minutes later, UFCO 1 responded and said he would summon medical assistance. *Id.*

An hour later, when no one had arrived to help Plaintiff despite his cellmate continuing to yell and kick the cell door, UFCO 2 came to the cell to retrieve lunch trays, but refused to check Plaintiff's condition. *Id.* Plaintiff put his arm in the food port in an attempt to keep UFCO 2 from leaving, but UFCO said he thought Plaintiff was faking, and refused to summon medical help. *Id.* At approximately 1:40 p.m., a nurse arrived at Plaintiff's cell and took Plaintiff's blood pressure, which was 222/133. *Id.* Plaintiff was taken to the medical room and given medication. *Id.*

As Count I of his amended complaint, Plaintiff claims that his rights under the Eighth and Ninth[1] Amendments to the United States Constitution were violated by the Defendant Hudson's failure to properly train USPL employees and failure to install intercoms in cells. *Id.* at 4-5. As Count II, Plaintiff alleges that Defendant Troll violated his Eighth Amendment right to be free from cruel and unusual punishment by confiscating Plaintiff's medication at intake and failing to ensure that it was promptly returned to Plaintiff. *Id*. As Count III, Plaintiff claims that UFCOs 1 and 2 violated his Eighth Amendment Rights by their actions as related above. *Id.* at 5-7. Plaintiff seeks declaratory relief, a preliminary and permanent injunction ordering Defendant Hudson to change policy and procedure to prevent such incidents from recurring, and an award against each defendant, jointly and severally, in the amount of $100,000 in compensatory damages and $100,000 in punitive damages. *Id.* at 8.

**II. Motion to Appoint Counsel (Doc. 6)**

Plaintiff has filed a motion to appoint counsel in which he advises the Court that he is unable to afford to retain counsel, his detention severely limits his ability to litigate, the Atchison

---

[1] The Ninth Amendment states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." The Tenth Circuit has explained that "'[t]he Ninth Amendment is not an independent source of individual rights; rather, it provides a rule of construction that we apply in certain cases.'" *Holmes v. Town of Silver City*, 826 Fed. Appx. 678, 681-82 (10th Cir. 2020) (citation omitted) (unpublished). Thus, it cannot provide the basis for a claim in this *Bivens* action. *See id.*

3

County Jail has no law library, counsel will be more able to present evidence and cross-examine witnesses in any trial in this matter, and Plaintiff's own attempts to obtain counsel have been unsuccessful. (Doc. 6.)

There is no constitutional right to the appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies within the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)). In deciding whether to appoint counsel, the district court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *see also Hill*, 393 F.3d at 1115.

Considering these factors, the Court denies the motion. As

explained below, the case may not proceed as filed. Although the lack of access to legal resources may become more important if this matter progresses, at this point Plaintiff need know only the facts of the underlying events. The Court, in this order and its previous order, has set forth the applicable legal standards. If Plaintiff files a second amended complaint that survives the initial screening process, he may later file a motion for appointment of counsel, which the Court will consider. Thus, the motion for appointment of counsel (Doc. 6) will be denied without prejudice.

**III. Screening Standards[2]**

As noted in the Court's prior order, Plaintiff's pro se status means that the Court liberally construes the amended complaint and applies less stringent standards than it would to formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). During this initial screening, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).

Nevertheless, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a

---

[2] Because *Bivens* claims and claims brought under 42 U.S.C. § 1983 are analogous, the Court cites to legal authority regarding both. *See Hernandez v. Mesa*, 140 S. Ct. 735, 747 (2020) (noting the parallel between the two causes of action).

claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570. "[T]o state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed (the plaintiff); and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007).

The Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Id.* (quotation marks and citations omitted).

6

Under this new standard, "a plaintiff must nudge his claims across the line from conceivable to plausible." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

**IV.   Analysis**

### Relief Sought

This matter is subject to dismissal because Plaintiff cannot obtain any of the relief he seeks. First, because Plaintiff is no longer confined at USPL, his request for preliminary and permanent injunctive relief and his request for declaratory relief are moot. Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*. Consequently,

"[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 1974. The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement. *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983 claim for injunctive relief moot). The Tenth Circuit has also applied this rationale to prisoner's claims for declaratory relief. *See Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *Patel v. United States*, 132 F.3d 43 (10th Cir. 1997) (unpublished) (inmate's for declaratory relief was moot because "[h]e has been transferred away from [the

8

prison in question] and there is no indication that he will be transferred back").

The mootness doctrine is based on the reality that even if Plaintiff receives injunctive relief, the Defendants from the former prison would be unable to provide the relief to Plaintiff. Plaintiff is currently being detained at Atchison County Jail. Because Plaintiff is no longer confined at USPL, his claims for injunctive relief and declaratory relief are moot and subject to dismissal.

Second, Plaintiff seeks compensatory damages. The Prison Litigation Reform Act (PLRA) provides in part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). This provision of the PLRA "limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). Simply put, without "a prior showing of physical injury or the commission of a sexual act," a prisoner plaintiff may not obtain compensatory damages. *Id.* at 878. Nominal and punitive damages, however, are not barred. *Id.* at 879.

The PLRA does not define "physical injury," but even taking all the allegations in the amended complaint as true, Plaintiff has

not alleged a physical injury. Plaintiff alleges in the amended complaint that during the relevant time, he "became ill," his blood pressure was at "a lethal and dangerous level," he "was . . . weak," and he experienced "pain and suffering," specifically "chest pain, numbness on his left side and dizziness." (Doc. 7, p. 2, 6-7.) These assertions do not satisfy the statutory prerequisite that Plaintiff show a physical injury resulted from Defendants' conduct. *See Markovich v. Kansas Dept. of Corrections*, 2010 WL 1563686, *4 (D. Kan. April 19, 2010) (unpublished) (assertion of "emotional trauma which caused crying, nightmares, night sweats, anxiety attacks, hypertension, and despair does not satisfy" the requirement in 42 U.S.C. § 1997e(e)"); *see also Davis v. Glanz*, 2015 WL 729696, *5 (N.D. Okla. Feb. 19, 2015) (unpublished) (high blood pressure attributed to overcrowding conditions insufficient to show physical injury). Because Plaintiff has failed to show a physical injury as required by 42 U.S.C. § 1997e(e), his claim for compensatory damages is statutorily barred.

The PLRA does not bar punitive damages, but punitive damages "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles*, 251 F.3d at 879. Plaintiff broadly alleges in the amended complaint that Defendant Hudson's failure to train and failure to install in-cell intercoms "amounts to deliberate indifference" to

10

Plaintiff's rights, that Defendant Troll failed to ensure Plaintiff's medication was returned to him more quickly than it was, that UFCO 1 failed to immediately procure medical care for Plaintiff, and that UFCO 2 refused to get help because he thought Plaintiff "'was faking.'" (Doc. 7, p. 5-6.) These allegations alone, even when presumed true, do not create a plausible factual basis for the conclusion that any Defendant in this matter was acted with a sufficiently culpable state of mind. Thus, Plaintiff has failed to allege sufficient facts to support a claim for punitive damages.

### Failure to State a Claim

In addition, this matter is subject to dismissal in its entirety for failure to state a claim on which relief can be granted. With respect to Count I, Plaintiff has failed to allege sufficient specific facts to support a plausible claim that Defendant Hudson failed to properly train USPL employees. The amended complaint states:

> "As the Warden[, Defendant Hudson] is in charge of the institution of policies and procedures that protect . . . the safety and welfare of pre-trial detainee[]s at U.S.P. Leavenworth. Plaintiff asserts that had [D]efendant Hudson properly trained U.S.P.'s correctional officers and medical staff as well as had proper safety measures in place (intercoms in cells) then the incident on 12/16/2021 would never have transpired. Defendant Hudson's willful disregard to properly train U.S.P.'s employee[]s and install intercoms in inmates['] cells amounts to deliberate indifference to the rights of the plaintiff that subjected the plaintiff to physical harm."

(Doc. 7, p. 4-5.)

11

As explained above and in the Court's prior order, Plaintiff may not rely on conclusory statements to support a claim for relief; rather, he must make specific assertions. *See Twombly*, 550 U.S. at 558; *Hall*, 935 F.2d at 1110; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that a court need not accept as sufficient "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements"). Plaintiff's bare allegation that Defendant Hudson failed to "properly train" USPL officers and medical staff and Plaintiff's belief that Defendant Hudson should have installed cell intercoms are inadequate to state a plausible claim for relief.

The remaining claims in this action are based on assertions of deliberate indifference to Plaintiff's medical needs. As explained in the Court's previous order, the United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Boyett v. County of Washington*, 282 Fed. Appx. 667, 672 (10th Cir. 2008)(citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir.

12

1991); *see also Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

For the objective component, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304. In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305.

In the amended complaint, Plaintiff has failed to allege sufficient facts to support a plausible claim that Defendant Troll had the requisite state of mind. The allegation that Defendant Troll reassured Plaintiff that his medication would be promptly returned from the routine confiscation at intake tends to show that Defendant Troll did not know of and disregard an excessive risk to Plaintiff's safety.

Furthermore, the claims against Defendants UFCO 1 and 2 involve the delay of medical treatment rather than the complete denial of

medical treatment. As the Court pointed out in its prior order, in situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *See Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

In the amended complaint, Plaintiff again has failed to assert facts that plausibly support the conclusion that he suffered substantial harm as a result of a delay in receiving medical treatment. Accordingly, the claims against Defendants Troll, UFCO 1, and UFCO 2 are subject to dismissal for failure to state a claim on which relief can be granted.

**V. Amended Complaint Required**

For the reasons stated herein, the current amended complaint is fatally deficient. Plaintiff will be given one final opportunity to file a complete and proper complaint on court-approved forms that cures all the deficiencies discussed herein.

Plaintiff again is cautioned that the second amended complaint will completely replace the initial complaint and the amended complaint. Thus, Plaintiff may not simply refer in the second amended complaint to an earlier pleading; any claims or allegations not included in the second amended complaint will no longer be before the Court. Plaintiff must write the number of this case (22-3129) at the top of the first page of his second amended complaint. He must name each defendant in the caption and he must refer to

each defendant again in the body of the second amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant, including dates, locations, and circumstances. Plaintiff must allege sufficient facts to show a federal constitutional violation. If Plaintiff does not file a second amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will proceed upon the current deficient amended complaint and will be dismissed.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for appointment of counsel (Doc. 6) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted to and including September 19, 2022, to file a complete and proper second amended complaint to cure all the deficiencies discussed herein. The clerk is directed to send the *Bivens* forms and instructions to Plaintiff.

**IT IS SO ORDERED.**

DATED:  This 18th day of August, 2022, at Topeka, Kansas.

S/ Sam A. Crow

SAM A. CROW

U.S. Senior District Judge