IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DAMON A. HARLIN, JR.,**

                      **Plaintiff,**

        v.                                    CASE NO. 22-3129-SAC

**USP LEAVENWORTH, et al.,**

                      **Defendants.**

## MEMORANDUM AND ORDER

**I. Nature of the Matter before the Court**

Plaintiff Damon A. Harlin, Jr., who is incarcerated at Atchison County Jail, filed this pro se civil action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971), seeking relief for alleged violations of his constitutional rights while he was housed at the United States Penitentiary (USPL) in Leavenworth, Kansas. He proceeds *in forma pauperis*. The matter comes before the Court on Plaintiff's second amended complaint (Doc. 9). For the reasons discussed below, the Court concludes that the second amended complaint remains deficient and will dismiss this action without prejudice for failure to state a claim on which relief can be granted.

**II. Initial Screening**

Because Plaintiff is a prisoner, federal statutes require the Court to screen his complaints upon filing and to dismiss them or any portion thereof that is frivolous, failed to state a claim on

1

which relief may be granted, or sought relief from a defendant immune from such relief. *See* 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

**The Original Complaint (Doc. 1)**

The initial complaint named as the sole defendant "USP Leavenworth" and alleged that between December 15, 2021 and January 26, 2022, Plaintiff experienced dizziness and a numb feeling on the left side of his body; when he sought medical help, it took two hours to arrive. On January 26, 2022, Plaintiff had similar symptoms, his blood pressure was very high, and he had contracted COVID-19. Plaintiff was in too much pain and lacked the strength to move to his top bunk. Because there was no emergency button within his reach, Plaintiff "was left lying on the floor" and did not receive medical treatment. As the sole count of the complaint, Plaintiff asserted that these events violated his rights under the Eighth Amendment to the United States Constitution. He sought money damages to compensate him for his pain and suffering.

After screening the complaint, the Court issued a Memorandum and Order (M&O) advising Plaintiff that this matter was subject to dismissal because of deficiencies in the complaint. (Doc. 3.) The Court pointed out that USP Leavenworth is not a proper defendant to a *Bivens* action. It also explained that "even if a proper defendant was named, the complaint as it stands does not allege sufficient

facts to support a plausible claim upon which relief can be granted." The Court advised:

> "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).
>
> "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570. "[T]o state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed (the plaintiff); and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007).
>
> The Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Id.* (quotation marks and citations omitted). Under this new standard, "a plaintiff must nudge his claims across the line from conceivable to plausible." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass

3

> a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

*Id.* at 2-4.

Construing the complaint to a claim of deliberate indifference to Plaintiff's medical needs, in violation of the Eighth Amendment, the Court further explained:

> The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).
>
> For the objective component, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305. In situations where treatment was delayed but not denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006).
>
> It appears from the complaint that Plaintiff may have seen medical staff on at least one occasion after a 2-hour wait, but it is unclear when or if he ever received treatment, or if treatment was denied altogether. It is also unclear whether any USPL officer knew that Plaintiff

4

> was in need of medical assistance. Simply put, the facts underlying Plaintiff's claim are not sufficient to state a plausible claim that his Eighth Amendment rights were violated.

*Id.* at 5-6.

Accordingly, the Court directed Plaintiff to file a complete and proper amended complaint that cured the identified deficiencies. *Id.* at 7. The Court specifically cautioned Plaintiff

> that an amended complaint is not simply a supplement to the original complaint. Rather, the amended complaint completely replaces the original complaint. Thus, any claims or allegations not included in the amended complaint are no longer before the Court. Plaintiff may not simply refer to an earlier pleading; the amended complaint must contain all allegations and claims that Plaintiff intends to pursue in this action, including those already set forth in the original complaint. . . . He must name each defendant in the caption and he must refer to each defendant again in the body of the complaint, where he must allege facts describing the unconstitutional acts taken by each defendant, including dates, locations, and circumstances. Plaintiff must allege sufficient facts to show a federal constitutional violation.

*Id.*

### The Amended Complaint (Doc. 7)

Plaintiff filed his amended complaint on August 15, 2022. (Doc. 7.) Therein, he named as Defendants USPL Warden Donald Hudson, USPL Intake Assessor Jason Troll, and two unknown federal corrections officers (UFCOs 1 and 2). The amended complaint alleged that when Plaintiff was transferred to UPSL on the afternoon of December 15, 2021, Defendant Troll conducted an intake assessment and confiscated Plaintiff's blood pressure medication, informing

Plaintiff that the confiscation was routine and the medication would be promptly returned. At about 11:00 the next morning, Plaintiff, who had not received his medication, began experiencing chest pain, numbness on his left side, and dizziness. Because Plaintiff was too weak to call for help, his cellmate began to do so, but there was no response. After approximately 30 minutes, Plaintiff's cellmate began kicking the cell door. About 30 minutes after that, UFCO 1 responded and said he would summon medical assistance.

An hour later, no one had arrived to help Plaintiff despite his cellmate continuing to yell and kick the cell door. UFCO 2 came to the cell to retrieve lunch trays, but refused to check Plaintiff's condition. Plaintiff put his arm in the food port in an attempt to keep UFCO 2 from leaving, but UFCO said he thought Plaintiff was faking, and refused to summon medical help. At approximately 1:40 p.m., a nurse arrived at Plaintiff's cell and took Plaintiff's blood pressure, which was 222/133. Plaintiff was taken to the medical room and given medication.

Count I of the amended complaint claimed that Plaintiff's rights under the Eighth and Ninth Amendments were violated by the Defendant Hudson's failure to properly train USPL employees and failure to install intercoms in cells. Count II alleged that Defendant Troll violated Plaintiff's Eighth Amendment rights by confiscating his medication at intake and failing to ensure that it was promptly returned. Count III claimed that UFCOs 1 and 2 violated

6

Plaintiff's Eighth Amendment Rights by their action and inaction when he was ill. Plaintiff sought declaratory relief, a preliminary and permanent injunction, compensatory damages, and punitive damages.

After screening the amended complaint, the Court issued a second M&O (Doc. 8) explaining to Plaintiff that the amended complaint was fatally deficient. Specifically, the Court advised Plaintiff that the Ninth Amendment is not a source of independent rights; that his transfer out of USPL rendered his requests for preliminary injunctive relief, permanent injunctive relief, and declaratory relief moot; that he had failed to assert the "prior showing of physical injury or the commission of a sexual act" required by the Prison Litigation Reform Act to obtain compensatory damages for mental or emotional injury; and that the amended complaint did not contain factual allegations that supported a plausible claim that any defendant acted with the state of mind required to obtain punitive damages.

In addition, the Court pointed out that the amended complaint, like the original complaint, failed to state a claim on which relief can be granted. The Court reminded Plaintiff that conclusory statements do not adequately "support a claim for relief; rather, he must make specific assertions." Count I was based only on conclusory statements, so it did not state a claim for relief. Because the remaining claims in the amended complaint were based on

7

assertions of deliberate indifference to Plaintiff's medical needs, the Court reiterated the applicable standards set forth in the first M&O. The Court then noted that the amended complaint did not allege sufficient facts to support a plausible claim that Defendant Troll acted with a sufficiently culpable state of mind. Finally, the Court noted:

> [T]he claims against Defendants UFCO 1 and 2 involve the delay of medical treatment rather than the complete denial of medical treatment. As the Court pointed out in its prior order, in situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *See Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).
>
> In the amended complaint, Plaintiff again has failed to assert facts that plausibly support the conclusion that he suffered substantial harm as a result of a delay in receiving medical treatment. Accordingly, the claims against Defendants Troll, UFCO 1, and UFCO 2 are subject to dismissal for failure to state a claim on which relief can be granted.

*Id.* at 13-14.

The Court gave Plaintiff "one final opportunity to file a complete and proper complaint on court-approved forms that cures all the deficiencies discussed herein." In doing so, the Court advised Plaintiff that if he filed a second amended complaint, it would stand on its own, completely replacing any previously filed complaints. The Court also expressly reminded Plaintiff that "any claims or allegations not included in the second amended complaint will no longer be before the Court."

8

**The Second Amended Complaint (Doc. 9)**

Plaintiff has now filed his second amended complaint (Doc. 9), and the Court has conducted the statutorily required screening. The second amended complaint identifies UFCO 1 and UFCO 2 as defendants and it asserts that when Plaintiff was transferred to USPL on December 15, 2021, his blood pressure medication was confiscated and not promptly returned to him despite assurances that it would be. The following morning, around 11:00, Plaintiff "fell gravely ill and was at a point unconsc[ious] and his cellmate began calling for help." *Id.* at 2. His cellmate screamed and kicked the cell door until he got UFCO 1's attention, at which point Plaintiff's cellmate told UFCO 1 "that [P]laintiff was experiencing a heart attack and that he hadn't had his medication." *Id.* at 3. Rather than radio for help, UFCO 1 left the scene.

An hour later, Plaintiff's condition "was worsening" and his cellmate was again yelling and kicking the cell door to try to get help. UFCO 2 arrived to collect the lunch trays, but refused Plaintiff's requests for medical help. *Id.* At some point, one or both UFCOs informed Plaintiff that they "'thought he was faking.'" *Id.* at 4. "[E]ventually," Plaintiff received medical attention from a nurse, who found that his blood pressure was 222/133. *Id.* at 3. Plaintiff was given nitroglycerin. Plaintiff claims that as a result of UFCO 1 and UFCO 2's failure to "use[] their training and call[]a medical emergency," he now "has to take numerous medications" and

9

he suffers from permanent numbness, a "feeling of electric shock on the left side of his body," night terrors, paranoia, and mental suffering. *Id.*

As the sole count of the second amended complaint, Plaintiff alleges that UFCOs 1 and 2 violated his Eighth Amendment rights by their deliberate indifference to his medical needs. *Id.* at 3-5. As relief, he seeks actual damages of $100,000.00 from each defendant and punitive damages of $100,000.00 from each defendant. *Id.* at 7.

**III. Analysis of the Second Amended Complaint**

As Plaintiff was informed in both of the Court's previous M&Os, an amended complaint completely replaces all complaints that come before it. It is not a supplement to an earlier complaint, and it must contain all allegations and claims that Plaintiff intends to pursue in the action, even claims and allegations already made in earlier complaints. Thus, the Court screens the second amended complaint based only on the allegations therein. The Court will not not refer back to the original complaint, the amended complaint, or the attachments to the amended complaint. Unfortunately, the second amended complaint does not cure the deficiencies identified in the Court's previous orders. As before, Plaintiff has failed to allege sufficient facts to state a viable claim for relief.

As the Court has previously explained to Plaintiff, an inmate advancing a claim based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs,"

which involves two components. *See Estelle*, 429 U.S. at 106; *Miller*, 948 F.2d at 1569. For the objective component, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

The second amended complaint alleges that Plaintiff "fell gravely ill and was at a point unconsc[ious]." Even taken as true, these statements are not specific enough to support a claim that Plaintiff was suffering "a serious illness or injury" when he asked the UFCOs for medical assistance. Plaintiff also asserts that his cellmate told UFCO 1 that Plaintiff was having a heart attack, but the reason for the cellmate's belief is unclear. Plaintiff does not explain when or for how long he was unconscious, nor does Plaintiff elaborate on his other symptoms; he merely asserts that he was "gravely ill." Similarly, although Plaintiff asserts that his "condition was worsening" between the interaction with UFCO 1 and the interaction with UFCO 2, he does not explain what symptoms he experienced or which symptoms worsened with time.

Even assuming solely for the sake of argument that Plaintiff has adequately pled the objective component in the second amended

11

complaint, he has not sufficiently demonstrated that the subjective component was met. "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304. In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305.

As Plaintiff has previously been advised, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *See Hall*, 935 F.2d at 1110. Yet Plaintiff continues to rely on such conclusory allegations in his second amended complaint. For example, Plaintiff's assertion that "[b]oth defendants knew of the emergency and made a consc[ious] decision to act with indifference to the plaintiff's medical emergency" is the type of conclusory assertion that does not support a claim for relief without supporting allegations of fact.

Moreover, Plaintiff acknowledges that he eventually received medical attention from a nurse, who administered nitroglycerin. Thus, as previously explained to Plaintiff, he must show that he suffered "'substantial harm' as a result of the delay" in treatment. (*See* Doc. 8, p. 14 (citing *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).) Assuming without deciding that Plaintiff has

12

adequately pled substantial harm, the second amended complaint does not contain sufficient factual allegations to support a plausible claim that Plaintiff's continuing numbness, sensation of electric shock, and mental anguish resulted *from the delay in treatment*.[1] Plaintiff's assertion that Defendants' "willful decision to disregard the seriousness of [his] condition has caused [him] permanent damage to his body and his mental health" is a conclusory statement and does not support a plausible claim for relief.

**IV. Conclusion**

As explained above, the second amended complaint does not cure the deficiencies identified in Plaintiff's prior complaints, deficiencies which the Court previously warned Plaintiff left this matter subject to dismissal in its entirety. Even construing the pro se second amended complaint liberally and taking all well-pleaded factual allegations in the second amended complaint as true, the second amended complaint does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *See Walker v.* Mohiuddin, 947 F.3d 1244, 129 (10th Cir. 2020) (quoting *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019)). Accordingly, the Court will dismiss this matter without prejudice for failure to state a claim upon which relief can be granted.

---

[1] The Court further notes that the second amended complaint leaves unclear the length of delay that occurred.

13

The Court further finds that this dismissal should count as a strike under the Prison Litigation Reform Act, which provides:

> "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court that is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

The dismissal of this matter constitutes Plaintiff's first strike. Thus, if Plaintiff accumulates two more strikes, he will be unable to proceed in forma pauperis in future civil actions before federal courts unless he is under imminent danger of serious physical injury.

**IT IS THEREFORE ORDERED** that this matter is **dismissed without prejudice** for failure to state a claim upon which relief can be granted.

**IT IS SO ORDERED.**

DATED: This 14th day of September, 2022, at Topeka, Kansas.

S/ Sam A. Crow

SAM A. CROW
U.S. Senior District Judge